IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN BRADLEY NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-1076-WKW |
| | ) | [WO] |
| JIMMY ABBETT, BLAKE JENNINGS, | ) | |
| and TALLAPOOSA COUNTY BOARD | ) | |
| OF COMMISSIONERS, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a 42 U.S.C. § 1983 action filed by Kevin Bradley Nelson ["Nelson"], a former pre-trial detainee of the Tallapoosa County Jail in Dadeville, Alabama. Plaintiff asserts in his complaint that Defendants violated his constitutional rights by housing him in unsanitary conditions. Defendants named to this action are Sheriff Jimmy Abbett, Jail Administrator Blake Jennings, and the Tallapoosa County Board of Commissioners ["Defendants"]. Nelson seeks money damages. *Compl. - Doc. No. 1* at 4.

Pursuant to the orders of this court, Defendants filed an answer, special report, and supporting evidentiary materials addressing the claims for relief raised in the complaint. In their report, Defendants deny they violated Nelson's rights. They further assert that this case is due to be dismissed because Nelson failed to exhaust an administrative remedy available to him at the Tallapoosa County Jail as required by the Prison Litigation Reform Act, 42

U.S.C. § 1997e(a). Specifically, Defendants maintain that, with respect to the claims presented in the instant complaint, Nelson failed to file a grievance and/or an appeal of any grievance about the allegations made the basis of his complaint. *Defs.' Report - Doc. Nos. 11, 12, Exs. A-F.*

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Order of February 14, 2011 - Doc. No. 13*; *Bryant v. Rich*, 530 F.3d 1368, 1375 & n.11 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."). Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment with respect to the exhaustion defense is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a)

2

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Nelson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for

4

summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only

factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

6

dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Nelson fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment. *Matsushita*, 475 U.S. at 587.

## II.  DISCUSSION

Nelson alleges that he was subjected to unsanitary conditions while in the Tallapoosa County Jail. In his complaint, Nelson asserted there was only one toilet in his cell for thirteen to sixteen men, and it was cleaned only once a week. He alleged that the shower drain was stopped up, with rusty covers, mold in the showers, on the walls, ceilings, and under bunks, and men were forced to sleep on wet and damp floors. He further alleged that there was no hot water in the sink. He alleged that the roof was leaking onto the bunks and floors where inmates sleep, and there were rusty vents in the cell. Plaintiff alleged that he suffered emotional distress because of the conditions, he could not eat or sleep, he had a foot fungus, and his feet were peeling because of water in the shower. *Compl. - Doc. No. 1* at 3.

### A. Exhaustion

In their dispositive motion, Defendants assert that this case is due to be dismissed because before Nelson filed this suit he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ["Prison Litigation Reform Act"], 42 U.S.C. § 1997e(a), through the Tallapoosa County Jail's inmate grievance procedure.

*Defs.' Report - Doc. No. 11, Exs. A, F.*

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *see also Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("the PLRA exhaustion requirement is not jurisdictional, and thus allowing a district court to dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies"). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Ngo*, 548 U.S. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition

8

to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to wait and bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90-91, 93.  The Court reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed. Appex. 81, 83 (11th Cir. 2012) (per curiam) (unpublished) (inmate's "attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect").

In support of their exhaustion argument, Defendants affirm that, at all times relevant

to this litigation, the Tallapoosa County Jail has maintained an inmate grievance procedure. This administrative remedy is available to all Tallapoosa County Jail inmates, including Nelson, and the policy is made known to inmates when they enter the jail. *Jennings Aff. - Doc. No. 11-1* at 3. The jail's grievance procedures are contained in the inmate rules handbook, and Nelson does not dispute receiving a copy of the rules upon being booked into the jail on November 22, 2010. The jail's grievance procedure reflects that inmates may request a grievance form from any correctional officer or the nurse. *Defs.' Ex. F - Doc. No. 11-6* at 13. The completed grievance is returned to the staff officer. An inmate is promised that he will receive a response within "a reasonable amount of time." *Id.* The rule further requires:

> You may appeal the decision or action in writing to the Lieutenant of Tallapoosa County within seventy-two (72) hours of the return receipt. You may appeal the decision or action in writing to the Jail Administrator of Tallapoosa County within seventy-two (72) hours of the return receipt. You may appeal this decision or action in writing to the Chief Deputy within Seventy two (72) hours of the return receipt. The final step of the appeal process will be to the Sheriff if written notice is given within seventy two (72) hours of receipt from the Chief Deputy.

*Id.* Defendants maintain that, once received, all grievances are entered into specialized software for management of the facility. *Jennings Aff. - Doc. No. 11-1* at 3. The grievance and response is then printed using the software and returned to the inmate. The Sheriff's Office retains all inmate grievances in the software in the course of regularly conducted business activity. *Id.* Defendants contend that a search of Nelson's entire inmate record on

10

the grievance management software reflects that he has never filed a grievance regarding the matters made the subject of his complaint.  *Id.*  Nelson signed the complaint in this case on December 16, 2010, and it is postmarked December 18, 2010.  *Compl. - Doc. 1* at 4-5.

In opposition to Defendants' dispositive motion, Nelson produced two grievances. In the first grievance, dated December 14, 2010, and marked "COPY," Nelson complained to Tallapoosa County Jail officers that the "C-1 showers and toilet not being sanitary, toilet smells of urine and showers backing up caus[]ing water to overflow into floor, officers passing dirty laund[]ry, razors through the trap where our meals are served."  *Pl.'s Resp., Ex. A - Doc. No. 14-2* at 1.  Nelson suggested that the toilets be cleaned once a day, that the shower drain be cleaned, and that dirty laundry and razors be passed through the door.  *Id.* That same day, Sergeant Mason responded to Nelson stating, "Mop buckets, toilet brushes etc are placed in the cells every morning.  It is the inmates' responsibility to get up and do the actual cleaning."  *Id.*

Nelson states he filed a further appeal on December 15, 2010, because the officer did not respond to his complaint about the razors.  *Pl.'s Resp. - Doc. No. 14* at 5. Lieutenant Nail responded that same day, stating that special cleaning had been completed in the cell the previous day, Tuesday December 14, 2010, by two other officers.  *Pl.'s Resp. Ex A - Doc. No. 14-2* at 1.  Nail explained that cells receive special cleaning supplies every Monday and Friday, and they received cleaning supplies each morning.  He wrote, "Monday is special cleaning on C-hall and A-hall it is cleaned one day with a special cleaner called Baam and

11

the rest of the month it is cleaned with bleach.  The toilets in the cell are cleaned with a bowl cleaner that is ordered on a regular . . . [illegible] they are sprayed with this cleaner when special cleaning is done." *Id.* (alteration added).  The grievance includes a signature on the "Reviewed by Jail Administrator" line; the signature is illegible, but Nelson states it is Jennings's.  *Id.*; *Pl.'s Resp. - Doc. No. 14* at 3.

The second grievance Nelson submitted is dated December 22, 2010, four days after his complaint in this case was postmarked for delivery, and two days after the court received the complaint.  *Id.* at 2; *Compl. - Doc. No. 1* at 1, 5.  In addition to the grievances, Nelson submitted the affidavit of another inmate, who averred that grievances at the jail are not processed according to the procedure in the handbook.  The inmate states, the grievances "are very seldom answered and are never returned to the inmate.  Inmates are not given a chance to appeal process." *Henson Aff. - Doc. No. 14-1* at 2.  Nelson also submitted his own, unsworn statements that he filed a grievance on November 28, 2010, six days after his arrival at the jail, complaining about black mold and bugs in the shower, but he has not submitted a copy of that grievance.  *Pl.'s Resp. - Doc. No. 14* at 3.  Nelson states he filed a grievance complaining that a nurse was not responding to his requests, but he has not included a copy of that grievance, either.  *Id.*

Nelson's exhibits directly contradict Defendants' position that Nelson never filed a grievance at the Tallapoosa County Jail, and they support his contention that he did, in fact, file grievances.  Nelson's grievances, however, do not create a question of material fact as

to whether he exhausted his administrative remedies before he filed suit in this case.  *See McCormick*, 333 F.3d at 1243 ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.").  The record, instead, demonstrates that Nelson did not exhaust all of his available administrative remedies before he filed suit.  Nelson filed his grievance regarding jail conditions on December 14, 2010.  He received a response that same day, and on the next day he received a response to his appeal to the Lieutenant.  Nelson does not say he tried to attempted a further appeal with the Chief Deputy or the Sheriff.  Furthermore, even if Nelson did file a further appeal to the Chief Deputy, he did not wait "a reasonable amount of time" for the officer to respond.  At most Nelson waited 72 hours, or until December 18, 2010, to file suit after receiving a response from the Lieutenant before filing suit.  Neither the grievance rule nor the Defendants in this action state specifically what constitutes "a reasonable amount of time" within which to respond, but presumably, in a situation such as Nelson's where he did not indicate his situation was an emergency or required immediate response, it is reasonable to allow the Chief Deputy more than 24 to 72 hours to respond to the grievance.  *E.g. Johnson v. Hensel*, C05-2258SI(PR), 2007 WL 2123696 at * 3 (N.D. Cal. July 23, 2007) (inmate's complaint premature when he filed suit 24 days after filing initial grievance, and 7 days after asking jail staff to respond to his grievance), *aff'd*, 329 Fed. Appx. 727 (9th Cir. 2009) (unpublished).  To demonstrate that administrative remedies were unavailable, Nelson must provide specific facts which indicate that jail staff inhibited him

from using the grievance process. *See Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). The only sworn statement regarding thwarted appeals is from another inmate who states that grievances are seldom answered, never returned to the inmates, and inmates are not given a chance to appeal. The comment, made over a year after Nelson filed suit, is not specific to Nelson, does not reflect officers' treatment of Nelson's grievance, and is too vague to create a question whether Nelson filed a further appeal. Moreover, the grievances filed by Nelson did receive prompt responses from the jail's staff. Under these circumstances, Nelson does not create a genuine question whether he filed a further appeal of his initial grievance and exhausted his administrative remedies. The record therefore supports the defense that Nelson failed to exhaust his administrative remedies ***before*** he filed suit with respect to the conditions about which he complains in the instant cause of action.

This court may properly resolve this factual issue relating to exhaustion, *see Bryant,* 530 F.3d 1374, and it finds that the facts do not support Nelson's arguments concerning his alleged inability to exhaust administrative remedies. Although Nelson submitted an affidavit from a fellow inmate containing conclusory allegations with respect to the grievance procedure, the record is nevertheless devoid of evidence that Nelson exhausted the available grievances and/or appeals procedure with respect to the claims set forth in the present complaint, as is necessary to exhaust administrative remedies properly. Nelson did not

14

complete the grievance procedure before he filed suit, and his attempts to do so after he filed

this suit "cannot cure the exhaustion defect." *See Smith*, 491 Fed. Appx. at 83. Exhaustion

of available remedies applies to all prisoners in any facility, it is mandatory, and it may not

be waived by the court. *See Alexander,* 159 F.3d at 1324-26 (exhaustion requirement of 42

U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or *Bivens*

); *see also Porter,* 534 U.S. 516. Furthermore, this court may not consider the adequacy or

futility of administrative remedies, but only the availability of such. *Higginbottom v Carter*,

223 F.3d 1259, 1261 (11th Cir. 2000), *citing Alexander,* 159 F.3d at 1323.

Based on the proof provided, it is clear that before filing suit Plaintiff did not take

advantage of the administrative remedies available to him at the Tallapoosa County Jail with

respect to his claims against Defendants concerning the conditions of his confinement. The

court has carefully reviewed the pleadings, documents and records filed in this matter and

finds that Nelson has failed to make a colorable showing that he has exhausted the

administrative remedies available to him at the jail and/or demonstrated that he has been

denied access to those administrative procedures during his incarceration at that facility.[2]

*See Kozuh v. Nichols*, 185 Fed. Appx. 874, 876 (11th Cir. 2006) (per curiam) (unpublished)

---

[2]While a prison official's failure to respond to a grievance within the time limits contained in an institution's grievance policy may render an administrative remedy unavailable, *see Lewis v. Washington,* 300 F.3d 829, 831-32 (7th Cir. 2002); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir. 2001); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir. 1998), an inmate cannot successfully argue that he exhausted administrative remedies where, in essence, he failed to properly employ them.

(rejecting inmate's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable" and noting that inmate had filed numerous informal complaints).  Based on the foregoing, the court concludes that the claims for relief presented in this cause of action are subject to dismissal as Plaintiff has not properly exhausted an administrative remedy available to him which is required before he may proceed in this court on his claims.  *Ngo*, 548 U.S. at 87-94.

In addition, Nelson is no longer incarcerated at the Tallapoosa County Jail, and the time for him to file a grievance regarding the his claims has expired. Thus, the administrative remedy provided by Defendants for the instant claims is no longer available to Nelson. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 & n.11; *Johnson*, 418 F.3d at 1157; *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies.").

**B.  Claims for Relief**

Even if Nelson satisfied section 1997e(a)'s requirement that he exhaust his available administrative remedies before filing suit, his complaint must be dismissed because

Defendants are entitled to immunity and Nelson's claimed constitutional violation is without merit.

### 1. Tallapoosa County Board of Commissioners

Nelson names Tallapoosa County Board of Commissioners ["the Board"] as a defendant. Nelson does not allege any specific wrongdoing by the Board. "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (*citing Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978))." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998). Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Id.* at 1292. In deciding whether a county commission is liable under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997) (*quoting Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)). State law is well settled "that an Alabama sheriff [and his jailers] act[] exclusively for the state rather than for the county in operating a county jail." *Turquitt*, 137 F.3d at 1288. Specifically, under all facets of Alabama law, a county sheriff and, by extension, officers employed by the sheriff in the management of a county jail, "act as state officers when supervising inmates

17

and otherwise operating the county jails." *Id.* at 1289; *Parker v. Amerson*, 519 So.2d 442, 443 (Ala. 1987) ("A sheriff [or county jailer] is an executive officer of the State of Alabama" and as such "is not an employee of a county for the purposes of imposing liability on the county."); *Ala. Code* § 14-6-1 (A sheriff has "the legal custody and charge of the jail in his county and all prisoners committed thereto."); *King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993) (*Ala. Code* § 14-6-1 establishes that "[t]he sheriff's authority over the jail is totally independent of the [county commission].)"

As is clear from the foregoing, Alabama sheriffs do not act on behalf of the county while managing inmates in the county jails. *Turquitt*, 137 F.3d at 1292. For section 1983 liability to attach to a county or its commissioners, the action at issue must have been committed by a person who acts under authority of the county. *McMillian*, 520 U.S. at 784-85. Alabama law, however, clearly directs that sheriffs possess only state authority during the daily operation of a county jail. *Vinson v. Clarke County*, 10 F. Supp. 2d 1282, 1295-96 (S.D. Ala. 1998). Plaintiff is not faulting the Commission for matters over which it has control. Instead, he challenges the handling of inmates, which is the sheriff's responsibility. Moreover, a county commission and its individual members are entitled to absolute immunity under section 1983 for any claims which challenge the appropriation of funds for the maintenance, operation or supervision of a county jail. *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998). Thus, defendant Tallapoosa County Board of Commissioners is due to be granted summary judgment.

18

**2. Suit Against Defendants in Their Official Capacity - Absolute Immunity**

To the extent that Nelson sues Defendants in their official capacity, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt*, 137 F.3d at 1289; *see* Ala. Const. Art. V, § 112 (designates county sheriff as member of State's executive department); *see also Parker*, 519 So.2d at 443 (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, it is clear Defendants are state officials entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacity.

### 3.  Conditions of Confinement[3]

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life.  *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). With regard to the objective component, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).  The subjective component requires a prisoner to show that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 828, 834, 837.

While the Constitution does not mandate comfortable prisons, conditions under which

---

[3]Plaintiff was a detainee and not a convicted prisoner, consequently his constitutional protections arise from the Due Process Clause of the Fourteenth Amendment.  *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (per curiam).  Nevertheless, the court analyzes the claim using the standards applicable to claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *Id.*; *see also Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights") (citation and quotation marks omitted).

inmates are housed must not be inhumane.  *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th

Cir. 2007).  The denial of "basic sanitation . . . is 'cruel and unusual because, in the worst

case, it can result in physical torture, and, even in less serious cases, it can result in pain

without any penological purpose.'"  *Young v. Quinlan,* 960 F.2d 351, 365 (3d Cir.1992)

(quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  The problems identified by Plaintiff,

however, such as a dirty toilet, leaky roof, mold, dampness, and no hot water in the sink,

without more, cannot be characterized as "abuses," and the simple fact of their existence is

insufficient to show a constitutional violation.  Other than Nelson's unsworn statement that

Defendant Jennings signed one of the grievances, Nelson does not provide evidence that

these named defendants were subjectively aware that Nelson faced a "substantial risk of

serious harm" and with such knowledge, disregarded that risk by failing to take reasonable

measures to abate it.  *See Farmer*, 511 U.S. at 828, 834, 837.  Nelson's own grievances are

evidence that officers responded swiftly to Nelson's complaint, that inmates receive bleach

and other cleaning supplies each day to clean, and that once a week a more thorough cleaning

is done.  Moreover, Defendants acknowledge that the roof leaked during heavy rainfall, and

staff has taken steps to correct the condition.  *Jennings Aff. - Doc. 11-1* at 4-5.  Staff placed

buckets on the floor under obvious leaks, mops and buckets were made available, the roof

was patched numerous times, and soon after Nelson filed suit the jail entered into a contract

to provide a long-term solution for repair of the roof.  *Id.* at 5; *Defs.' Ex. E - Doc. 11-5.*

Consequently, Nelson fails to create a genuine issue of material fact on the question of

whether the defendants violated his right to constitutional conditions of confinement, and summary judgment is due to be granted to Defendants.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that on or before **September 19, 2013** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d

22

33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 5th day of September, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE